**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

CLINTON STRANGE,

*Plaintiff*

v.

ADT LLC,

*Defendant*



FILED BY _PCS_ D.C.

SEP 27 2021

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

## CIVIL ACTION COMPLAINT

**FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO THE:**

**TELEPHONE CONSUMER PROTECTION ACT OF 1991**
**&**
**FLORIDA TELEPHONE SOLICITATION ACT OF 2021**

### PRELIMINARY STATEMENTS:

1. The *pro se* Plaintiff Clinton Strange ("PLAINTIFF") brings suit against Defendant ADT
   LLC ("ADT") to enforce the federal Telephone Consumer Protection Act of 1991 ("TCPA")
   and the Florida Telephone Solicitation Act of 2021 ("FTSA").

2. As set out more fully below, the Plaintiff seeks Declaratory and Injunctive Relief, along with
   Statutory Damages, Actual Damages, recovery of expenses, fees, costs, and pre and or post
   judgments interests on judgment as allowed by law.

### JURISDICTION & VENUE:

3. Jurisdiction primarily arises in this U.S. District Court under a Federal Question as the TCPA
   is a federal statute pursuant to 28 U.S. Code § 1331.

4. Supplemental Jurisdiction would be properly applied as the Plaintiff's state law claims arise out of the same set of facts that give rise to federal question jurisdiction pursuant to 28 U.S. Code § 1367.

5. Venue lies proper in this U.S. District because the Defendant maintains its headquarters in Palm Beach County, Florida and Plaintiff consents to this venue pursuant to 28 U.S. Code § 1391.

### THE PARTIES:

6. Plaintiff CLINTON STRANGE is an adult individual residing at the address of:

> CLINTON STRANGE
> 7021 WINBURN DRIVE
> GREENWOOD, LA 71033

7. Defendant ADT LLC is a Delaware Domestic Liability Company principally headquartered at the address of:

> ADT LLC
> 1501 YAMATO ROAD
> BOCA RATON, FL 33431

### FACTUAL ALLEGATIONS:

Historical Background

8. Since 2019, the Plaintiff has been receiving calls on his federally and state Do-Not-Call registered personal cellphone number 318-423-5057 that are sales calls for Defendant's Home Alarm systems and services.

9. These calls displayed misleading Caller ID information in order to conceal the identity of the calling party via a technique called "local neighborhood spoofing".

10. These calls (originating from India) would utilize a soundboard agent (Avatar) pre-recorded voice at the beginning of the calls that would ask a series of vetting (screening) questions before transferring him to a Tarrant County, Texas call center.

11. Plaintiff did not make ADT aware of the issue until August 2021, at which time he made them *very* aware.

<u>The Warning</u>

12. On or around August 17, 2021, the Plaintiff drafted a letter to ADT's Litigation Department detailing one of the calls he received and specifically one from January 26, 2021.  He also provided some details of how he connected that call to a North Carolina based ADT Authorized Dealer named Safe Streets USA LLC.

13. On August 26, 2021, a member of the ADT Do Not Call team that is responsible to investigate telemarketing complaints named Joe Racz emailed the Plaintiff that an investigation was being conducted regarding the matter, and Plaintiff replied that afternoon by providing additional information regarding the specific authorized dealer, and their vendor, and sub-vendor.

14. On September 2, 2021, Joe Racz emailed Plaintiff a copy of ADT's *undated* Do-Not-Call policy titled "Telemarketing Policy Statement", and Plaintiff supplemented his claim by providing a transcript of the January 26, 2021 call.

15. On September 10, 2021, Maria DiGiorgio, ADT's Assistant General Counsel, replied with the results of their investigation, and as expected, denied liability and referred Plaintiff to the down-line parties.

16. ADT apparently took no disciplinary action on Safe Streets USA LLC, and Safe Streets USA LLC likewise took no action against their vendor.

<u>The Documented Incident</u>

17. On September 15, 2021 at 12:41pm CST, the Plaintiff was in his living room sitting on his couch watching television and eating lunch when his Federal and State of Louisiana Do-Not-

Call listed cellphone number 318-423-5057 began to ring, vibrate, and illuminate indicating that he was receiving an incoming call from a local number 318-232-9654 as depicted below in Figure A, which Plaintiff represents is a true and accurate depiction of his cellphone's screen in regard to the call.



**Figure A**

18. Plaintiff answered the call because it looked like someone local calling, and (at the beginning of the call) an Avatar / Soundboard Agent played a series of pre-recorded voice message questions vetting Plaintiff for a home security system offer that ended with "*Are you the decision maker for the household?*". Plaintiff replied "*Yes*".

19. Plaintiff was then transferred to 'Antonio' who said he was one of the 'trained specialists' who asked Plaintiff some more screening questions in regard to the offering of a "*Safe Streets powered by ADT*" home security system for "*$47.99 a month*" before transferring the Plaintiff to 'Ronald Stokes' in Tarrant County, Texas thirteen (13) minutes into the call.

20. When Ronald Stokes got to the part in the 'closing script' about verifying the phone number something must have 'flagged' in his system. He (Ronald Stokes) got real quiet, and after a few seconds asked if Plaintiff was recording the conversation. Plaintiff indicated *"yes"*. Ronald Stokes politely asked, *"May I ask why"*. Plaintiff replied by explaining that he was documenting the call for a lawsuit. The Tarrant County, Texas call center erupted with laughter audible in the background. Plaintiff then asked to speak with Ashish Bhatia (the owner of America Homesecures, Inc.), but was told Mr. Bhatia was not there. Plaintiff then asked to speak with Albeart Pintu (Director of Field Operations) for America Homesecures, Inc. Plaintiff was not very nice to Mr. Pintu. Mr. Pintu promised *"we will take you off the list. We will not call you again"*.

21. On September 15, 2021 at 1:38pm CST the Plaintiff called back to the number that appeared on his caller ID to verify that it was spoofed and the standard disconnected announcement played *"Welcome to Verizon Wireless. The number you have dialed has been changed, disconnected, or is no longer in service. If you feel you have reached this recording in error, please check the number and try your call again. Announcement 2 switch 220-2."*

<u>Why the Plaintiff Brings the Action</u>

22. On January 4, 2018, the Plaintiff registered his residential cellphone number 318-423-5057 on the Federal Do-Not-Call list, and later on August 2, 2018, registered his number with the Louisiana Do Not Call Program.

23. Plaintiff registered his cellphone number so he would not receive unsolicited telemarketing calls. Autodialed telemarketing calls annoy the Plaintiff. Autodialed telemarketing calls that play pre-recorded messages annoy the Plaintiff. They irritate him by interrupting his meals, interrupt his television viewing, and they will not stop because people like the Plaintiff are

not (or have not been) proactive enough in litigating the tortfeasing miscreants and the principals who employ them into receivership.

<u>Why the Defendant is Vicariously Liable for the September 15, 2021 Call</u>

24. ADT has been aware since the inception of litigation in *Abramson v. Safe Streets USA LLC, et. al.*, No. 20-cv-62325 (S.D. Fla.) and *Jones et al. v. Safe Streets USA LLC et al.*, No. 5:19-cv-00394-BO (E.D. N.C.) that Safe Streets USA LLC, acting on behalf of ADT, hires vendors, who in turn hire sub-vendors to market ADT home security systems through illegal telemarketing.

25. ADT was also aware of the Plaintiff's *specific* allegations regarding the *exact* dealer, vendor, and sub-vendor involved in the unlawful behavior on August 26, 2021, but nonetheless failed to act on this information.

## THE COUNTS & CAUSES OF ACTION:

### CAUSE OF ACTION No. I

### (Plaintiff v. Defendant)

### Violations of the Florida Telephone Solicitation Act, Fla. Stat. § 501.059 *et seq.*

26. Plaintiff incorporates all the foregoing paragraphs as though the same were set forth at length herein.

27. Pursuant to Fla. Stat. § 501.059(1)(a) the September 15, 2021 call was a Telephone Solicitation, and Plaintiff was the "Called party" who is the "regular user of the telephone number that receives a telephonic sales call".

28. Defendant ADT was a person "making or *allowing* the placement of a telephonic sales call by telephone call, text message, or voicemail transmission to deliver or cause to be delivered

to the called party a telephonic sales call using an automated system for the selection or

dialing of telephone numbers, the playing of a recorded message when a connection is

completed to a number called".

29. ADT is a "Telephone solicitor" a natural person, firm, organization, partnership, association,

or corporation, or a subsidiary or affiliate thereof, doing business in this state, who makes or

*causes to be made* a telephonic sales call, including, but not limited to, calls made by use of

automated dialing or recorded message devices.

30. Pursuant to Fla. Stat. § 501.059(5) "a telephone solicitor or other person may not initiate an

outbound telephone call, text message, or voicemail transmission to a consumer, business, or

donor or potential donor who has previously communicated to the telephone solicitor or other

person that he or she does not wish to receive an outbound telephone call, text message, or

voicemail transmission: (a) Made by or *on behalf of the seller* whose goods or services are

being offered".

31. Defendant ADT is vicariously liable to the Plaintiff because the September 15, 2021 call was

made on behalf of ADT after Plaintiff advised them of his desire not to receive calls from

them by [their] dealers, vendors, and sub-vendors on their behalf.

32. Pursuant to Fla. Stat. § 501.059(8)(a) "A person may not make or knowingly allow a

telephonic sales call to be made if such call involves an automated system for the selection or

dialing of telephone numbers or the playing of a recorded message when a connection is

completed to a number called without the prior express written consent of the called party."

33. Defendant ADT knowingly allowed their dealer, vendor, and sub-vendor to make the

September 15, 2021 call on their behalf that played pre-recorded voice messages at the

beginning of the call utilizing Soundboard / Avatar technology.

34. Pursuant to Fla. Stat. § 501.059(8)(b) "It shall be unlawful for any person who makes a telephonic sales call or *causes a telephonic sales call to be made* to fail to transmit or *cause not to be transmitted* the originating telephone number and, when made available by the telephone solicitor's carrier, the name of the telephone solicitor to any caller identification service in use by a recipient of a telephonic sales call…"For purposes of this section, the term "caller identification service" means a service that allows a telephone subscriber to have the telephone number and, where available, the name of the calling party transmitted contemporaneously with the telephone call and displayed on a device in or connected to the subscriber's telephone."

35. Defendant ADT caused a telephonic sales call to be placed to the Plaintiff's cellphone which manipulated (spoofed) the Caller ID information.

36. Pursuant to Fla. Stat. § 501.059(10)(a) "A called party who is aggrieved by a violation of this section may bring an action to: (1)   Enjoin such violation. (2)   Recover actual damages or $500, whichever is greater.

    (b) If the court finds that the defendant willfully or knowingly violated this section or rules adopted pursuant to this section, the court may, in its discretion, increase the amount of the award to an amount equal to not more than three times the amount available under paragraph (a).".

37. Plaintiff seeks statutory damages of $500 for each subsection the Defendant (acting by and through its agents) that Defendant ADT is vicariously liable to the Plaintiff for together along with injunctive relief enjoining Defendant ADT acting by and through its agents from future violations.

## COUNT II

### (Plaintiff v. Defendant)

### Violation of the Telephone Consumer Protection Act of 1991, 47 U.S. Code § 227(b)

38. Plaintiff incorporates all the foregoing paragraphs as though the same were set forth at length herein.

39. For more than twenty years, the U.S. Federal Communications Commission ("FCC") has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

40. In its January 4, 2008 ruling, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

41. In fact, the Federal Communication Commission has instructed that sellers such as ADT may not avoid liability by outsourcing telemarketing to third parties, such as Safe Streets USA LLC and their vendors and sub-vendors: ""[A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be

required to sue each marketer separately in order to obtain effective relief. As the FCC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.'" *May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

42. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." See *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

43. Finally, the May 9, 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id*. at 6592-593 (¶ 46). Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id*. at 6593 (¶ 46).

44. Soundboard technology (interchangeably referred to as an "Avatar") enables telemarketing agents to communicate with customers over the phone by playing pre-recorded audio clips instead of using the agent's live voice.  The agent can choose a pre-recorded clip to ask questions that correspond to a customer, while retaining the ability to break into the call and speak to the customer directly.  Soundboard also enables agents to make and participate in multiple calls simultaneously. So, the telemarketers can bother multiple consumers at one time.

45. Defendant is vicariously liable to the Plaintiff for $500 based on the September 15, 2021 call that violated 47 U.S. Code § 227(b)(1)(A)(iii) pursuant to 47 U.S. Code § 227(b)(3)(B).

46.  If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the Court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

## COUNT III
### (Plaintiff v. Defendant)
### Violation of the Telephone Consumer Protection Act of 1991, 47 U.S. Code § 227(c)

47. Plaintiff incorporates all the foregoing paragraphs as though the same were set forth at length herein.

48. Defendant ADT has a written "Telemarketing Policy Statement" (Do Not Call Policy), but they do not practice it as stated. When ADT says "*ADT requires that ADT's authorized dealers and all third-party companies who engage in telemarketing of ADT's products or services ensure they are in compliance U.S. federal and state laws regarding telemarketing. ADT further requires that they access and scrub against ADT's Internal Do Not Call list prior to making any outbound calls to consumers.*" They ratified and approved of the conduct of their dealer, vendor, and sub-vendor by not taking action to correct the misbehavior. They continued to accept sales leads from Safe Streets USA LLC even though they knew that consumers were being harmed as described above and still continue to benefit from the fruits of illegal telemarketing of their services.

49. Plaintiff uses his cellphone residentially as a cooking timer, a home television viewing device via a Google Chromecast apparatus, a home telemedicine tool to connect with his VA Healthcare providers, and as a home telephone.

50. Defendant is vicariously liable to the Plaintiff for $500 based on the September 15, 2021 call

that violated 47 U.S. Code § 227(c)(5) pursuant to 47 U.S. Code § 227(c)(5)(B) that was

preceded by a call on January 26, 2021 (two calls in a 12-month period).

51. If the Court finds that the defendant willfully or knowingly violated this subsection or the

regulations prescribed under this subsection, the Court may, in its discretion, increase the

amount of the award to an amount equal to not more than 3 times the amount available under

47 U.S. Code § 227(c)(5)(B) pursuant to 47 U.S. Code § 227(c)(5)(C).

### PRAYER FOR RELIEF:

**Wherefore,** the Plaintiff seeks judgment in Plaintiff's favor and damages against the Defendant
based on the following requested relief:

Statutory Damages;

Trebled Damages;

Stacked Damages;

Enjoinder from Future Violations;

Costs, Fees and Expenses;

Pre and or Post Judgment Interest as Allowable by Law;

&

Such other and further relief the Court deems necessary, just and proper.

Respectfully Submitted,

X _Clinton Str_____        9-24-2021
Clinton Strange                        Dated
Pro Se
7021 Winburn Drive
Greenwood, LA 71033
(318) 423-5057
StrangeC982@gmail.com

CERTIFIED MAIL

7020 0090 0001 6081 4086

Clinton Strange
7021 Winburn Drive
Greenwood, LA 71033

Office of the Clerk,
Paul G. Rogers Federal Building and U.S. Courthouse
701 Clematis Street, Room 202
West Palm Beach, FL 33401

New Case Filing